IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 FEB 28  PM 3: 07

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

INNOVATIVE SPORTS MANAGEMENT, INC.,
as Broadcast Licensee of the September 11, 2010
"Mexican Fiesta:" Morales v. Limond Event d/b/a
Integrated Sports Media,

                **Plaintiff,**

-vs-

                **Case No.  A-13-CA-785-SS**

MAZATLAN ENTERPRISES, LLC, Individually
and a/k/a Taqueria Mazatlan d/b/a Mazatlan
Enterprises, LLC d/b/a Mazatlan Enterprises;
ALFREDO PALENCIA, Individually and a/k/a
Alfredo Plascencia-Leon d/b/a Taqueria Mazatlan
d/b/a Mazatlan Enterprises, LLC
d/b/a Mazatlan Enterprises; and OSCAR
HERNANDEZ Individually and a/k/a Oscar A.
Hernandez d/b/a Taqueria Mazatlan d/b/a
Mazatlan Enterprises, LLC d/b/a Mazatlan
Enterprises,

                **Defendants.**

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Innovative Sports Management, Inc.'s Motion for Default Judgment [#20]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This is an anti-piracy case involving the Federal Communications Act of 1934 (the Communications Act). Plaintiff Innovative Sports Management, Inc. (Innovative) is a license

company, which was authorized to sub-license the closed-circuit telecast of the September 11, 2010

"Mexican Fiesta: Morales v. Limond" Event, including undercard or preliminary bouts (collectively,

the Event), at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, and restaurants

throughout Texas. Defendants allegedly exhibited the event in Defendants' establishment, Taqueria

Mazatlan Enterprises (the Establishment), without paying the required licensing fee to Innovative

and without Innovative's authorization.

If true, the Defendants would be in violation of the Federal Communications Act of 1934,

47 U.S.C. §§ 553, 605. Innovative seeks the maximum statutory damages of $10,000.00 under 47

U.S.C. § 605(e)(3)(C)(i)(II), $50,000.00 for a "willful" violation under 47 U.S.C. § 605(e)(3)(C)(ii),

attorneys' fees and costs, and a permanent injunction enjoining Defendants from ever intercepting

or exhibiting an unauthorized program in violation of the Federal Communications Act.

Defendants have failed to plead, respond, or otherwise defend themselves in this action, and

Innovative brings this Motion for Default Judgment.

## Analysis

### I.    Legal Standard—Default Judgment

When a party defaults by failing to appear or defend a claim, the Court may enter a final

judgment without conducting a trial on liability. *See* FED. R. CIV. P. 55(b). Default judgments are

disfavored, and should only be granted sparingly. *Rogers v. Hartford Life & Accident Ins. Co.*, 167

F.3d 933, 936 (5th Cir. 1999). However, that policy is "counterbalanced" by other judicial interests

such as justice and expediency, such that granting a default judgment is generally a matter of

discretion of the Court. *See id.* The Second Circuit has noted the threat of default judgment

encourages parties to timely file pleadings, and discourages dilatory tactics. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

Obtaining a default judgment is a three-step process, involving (1) default by the defendant, (2) an entry of default, typically by the clerk of court, and (3) the default judgment itself, issued by the court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). However, there is no default, and the clerk of court cannot enter default, when the defendant has not been served. *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1152 n.11 (2d Cir. 1995). The plaintiff bears the burden of showing the summons and complaint were served upon the defendant on a certain date. *See O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1398 (7th Cir. 1993). Judgment cannot be rendered against a defendant unless the defendant has been served with process, or has otherwise appeared or waived service of process. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

## II.     Application

The three-step process for obtaining a default judgment has been satisfied in this case. Defendants have been served. Defendants have failed to plead, respond, or otherwise defend themselves in this action, and they have, therefore, defaulted. The clerk of the court has entered default against Defendants. *See* Clerk's Entry of Default [#21]. Now, Innovative moves this Court for default judgment, and the Court, in granting the motion, considers the claim and the amount of damages.

### A.     Liability

As relevant to this case, the Communications Act combats piracy of television signals by prohibiting the unauthorized interception and broadcast of satellite or cable transmissions. 47 U.S.C.

§§ 553, 605. The Communications Act is a strict liability statute. To establish liability under the Communications Act, Innovative must establish (1) the Event was shown in Defendants' Establishment, and (2) the exhibition was not authorized by Innovative. *See KingVision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999) (finding a bar showed a preliminary bout required judgment in favor of plaintiff); *see also Joe Hand Promotions, Inc. v. Macias*, No. H-11-1773, 2012 WL 950157, at *2 (S.D. Tex. Mar. 19, 2012) ("The FCA is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission.").

The undisputed evidence, which consists of affidavits, establishes Defendants' liability in this case. Innovative had the rights to exhibit and sublicense the right to exhibit the Event. Pl.'s Mot. Default J. [#20-1], Ex. A (Riley Aff.), at ¶¶ 4–6. Defendants broadcast the Event in their establishment for their patrons to view. *Id.* at ¶ 8; *Id.*, Ex. A-2 (Giese Aff.). Defendants were not authorized by Innovative to broadcast the Event and had not paid the appropriate commercial licensing fee to Innovative. Riley Aff. ¶ 9.

Accordingly, the Court finds Defendants violated 47 U.S.C. §§ 553 and 605 by showing, without authorization, the closed-circuit telecast of the "Mexican Fiesta: Morales v. Limond" Event, including undercard or preliminary bouts on September 11, 2010.

## B.   Statutory Damages

The Communications Act allows the aggrieved party to elect to recover either its actual damages plus the violator's profits attributable to the violation, or statutory damages of at least $1,000.00 but not more than $10,000.00, as the court considers just. 47 U.S.C. § 605(e)(3)(C)(I). Innovative has elected to seek statutory damages, and requests the maximum amount of $10,000.00.

The Court finds the maximum statutory damage amount to be a just award in this case. Defendants could have licensed the Event and shown the fight in their establishment but did not do so. Innovative's actual damages would be difficult, if not impossible, to prove. As a starting point, Innovative lost both potential customers and potential licensing revenue when Defendants illegally broadcast the Event. Riley Aff. ¶¶ 12–13. Pirate broadcasters also threaten the vitality of the entire pay-per-view industry, including Innovative, because at least some businesses are unwilling to compete with the pirates by paying licensing fees. *Id.* ¶ 12. Congress specifically amended the Communications Act to address the problem of satellite and cable piracy, stiffening the penalties and expanding standing to sue in order to thwart the piracy it deemed a threat to the long-term viability of the industry. *United States v. Harrell*, 983 F.2d 36, 39–40 (5th Cir. 1993) (citing 1988 U.S. Code Cong. & Admin. News 5577, 5657–58). Congress felt an award of $10,000.00 would prove sufficient to deter unauthorized broadcasts, and the Court finds $10,000.00 is a just amount in this case.

## C.    Willful Violation Damages

Innovative also seeks additional damages because the Communications Act allows a court to increase an award of damages by up to $100,000.00 for each violation "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

The willfulness of Defendants' violation is established by the undisputed evidence indicating an unauthorized commercial establishment can only receive a broadcast of the Event through some wrongful action, such as using an unauthorized decoder or satellite access card, or moving an authorized cable box from its authorized location (such as a personal residence) to the commercial

establishment.  Riley Aff. ¶ 10.  Defendants' intent to benefit financially is also apparent from the record.  Defendants intercepted the Event and broadcast it on two big-screen television to twelve patrons.  *See* Giese Aff.  Accordingly, the Court finds Defendants' violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).

The amount of "willful" damages is left to the Court's discretion, though the award cannot exceed $100,000.00 for any single violation.  Innovative requests five times the amount of statutory damages, or $50,000.00. Pl.'s Mot. Default J. [#20], at ¶ 18.  The Court finds a total damages award of $60,000 to be excessive in this case.  The commercial licensing fee for the Event is based on seating in the establishment showing the Event; any establishment seating fifty to one-hundred patrons would be charged the minimum rate of $1,000.00.  Pl.'s Mot. Default J. [#20-1], Ex. A-3. Innovative's eye witness to the broadcast estimated the capacity of Defendants' establishment as approximately seventy-five people.  Giese Aff. Defendants would likely have paid the minimum rate to license the broadcast.  The Court finds an additional award of $5,000.00 is sufficient to hold Defendants accountable and discourage commercial establishments from committing similar violations. A total damages award of $15,000.00 equates to *fifteen times* the legitimate licensing cost.  Such an award should provide an adequate disincentive for would-be future violators, and is in line with this Court's prior treatment of similar offenders.  *See J&J Sports Production, Inc. v. Candido Lumagbas Raygon*, No. A-11-CA-936-SS, at 5–7 (W.D. Tex. Nov. 01, 2012) (order granting summary judgment); *J&J Sports Productions, Inc. v. Papagallos 1, Inc.*, No. A-08-CA-691-SS, at 6–7 (W.D. Tex. April 17, 2009) (order granting summary judgment).

**D.    Attorneys' Fees and Costs**

Innovative also requests an award of attorneys' fees and costs.  The Court is required to award reasonable attorneys' fees to an aggrieved party who prevails under the Communications Act. 47 U.S.C. § 605(e)(3)(B)(iii).  The undisputed evidence establishes an award equal to one-third of the recovery—$5,000.00 in this case—is reasonable for cases such as this, and is frequently the measure of attorneys' fees used in Communications Act cases by federal courts in Texas. Pl.'s Mot. Default J. [#20-1], Ex. B (Diaz Aff.).  The Court declines to make a contingent award for post-judgment or appellate attorneys' fees, but will entertain such a request if it becomes necessary in the future.  The Court also awards Innovative such other reasonable costs as it has incurred.

**E.    Injunction**

Innovative finally requests an injunction essentially prohibiting Defendants from violating the Communications Act in the future. The Court finds such an injunction would serve no purpose or function not already provided by the statute itself, and therefore declines to issue an injunction.

**Conclusion**

Accordingly,

IT IS ORDERED that Plaintiff Innovative Sports Management, Inc.'s Motion for Default Judgment [#20] is GRANTED;

IT IS FURTHER ORDERED that the Plaintiff is awarded statutory damages in the amount of $10,000.00 and an additional award of damages for a willful violation in the amount of $5,000.00. Plaintiff is thus awarded a total of FIFTEEN THOUSAND AND 00/100 DOLLARS ($15,000.00), plus post-judgment interest at the rate of .12 percent per annum calculated from the date of this order;

IT IS FURTHER ORDERED that the Plaintiff is awarded reasonable attorneys' fees in the amount of FIVE THOUSAND AND 00/100 DOLLARS ($5,000.00) and its costs;

IT IS FINALLY ORDERED that Plaintiff's request for a permanent injunction is DENIED.

SIGNED this the __28th__ day of February 2014.

SAM SPARKS
UNITED STATES DISTRICT JUDGE